IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Shumaker, Loop & Kendrick, LLP, | Case No. 3:08 CV 1855 |
| Appellant, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Thomas S. Zaremba, | |
| Appellee. | |

### INTRODUCTION

This is a bankruptcy appeal. The question on appeal is: Who bears the burden of proving the validity of a written waiver of the attorney-client privilege? Appellant Shumaker, Loop & Kendrick, LLP ("SLK") is the proponent of the privilege and has filed briefing in support of its position (Doc. Nos. 35 & 37). Appellee Thomas Zaremba, Trustee ("Trustee") opposes assertion of the privilege and has filed briefing in support of his position (Doc. No. 36). A hearing was held on February 5, 2009 (Doc. No. 40).

### FACTUAL BACKGROUND

Debtors in this matter are broker-dealers Continental Capital Investment Services, Inc. ("CCIS") and Continental Capital Securities, Inc. ("CCS"). Debtors are being liquidated under the Securities Investor Protection Act, 15 U.S.C. § 78aaa, *et seq.* ("SIPA"). Zaremba is the appointed SIPA Trustee on behalf of Debtors' investors. SLK was legal counsel to Debtors prior to liquidation proceedings.

SLK also served as legal counsel for Continental Capital Corporation ("CCC"), the parent of CCIS and CCS, and certain non-debtor related entities, including:

- Continental Capital Advisors, Inc. ("CCAdvisors"),
- Continental Capital Merchant Bank ("CCMBank"),
- Active Leisure, Inc. ("Active"),
- Americus Communications ("Americus"), and
- IVES, Inc. ("IVES").[1]

During the course of SLK's representation of CCC and its related entities, William Davis ("Davis"), the former president, chairman, and chief executive officer of CCC and an investment advisor with Debtors, engaged in a Ponzi scheme that included mail fraud, bank fraud, and theft resulting in the loss of millions of dollars for customers of Debtors. Davis was convicted and sentenced to 188 months incarceration. *See United States v. Davis*, No. 3:05-CR-744 (N.D. Ohio).

Davis' fraud and theft caused the financial collapse of Debtors, in addition to CCC and its affiliated companies. In August 2003, the Securities Investor Protection Corporation filed a Complaint seeking protection under SIPA for the customers of Debtors and requesting the appointment of a Trustee to oversee the liquidation and investigation of the affairs of Debtors.

During the course of his investigation, the Trustee obtained ten waivers from Davis, each purporting to waive attorney-client privilege with respect to ten separate entities. Each waiver was identical, save for a "Re" subtitle to each waiver which names the entity and then refers to the entity as "the Company." Each waiver is dated September 28, 2006 and states:

---

[1] SLK does not assert privilege on behalf of five other related entities because these entities were never clients of SLK, or at least SLK has no such records.

2

> I, William C. Davis, irrevocably waive, on behalf of the Company, any attorney-client privilege, work product, or other privileges of any kind or nature and request that all documents and files in your possession or under you control related to the Company be delivered to Thomas S. Zaremba, SIPA Trustee for the Liquidation of Continental Capital Investment Services, Inc. and Continental Capital Securities, Inc.
>
> > */s/ William C. Davis*
> > William C. Davis on behalf of
> > [Continental Capital Merchant Bank, LLC] [variable]

(SLK Exs. 6 A-J). The documents bear the signature of John Minock as witness. At oral argument, Minock was identified as legal counsel for Davis in his criminal prosecution (Tr., p. 11). However, neither Davis nor Minock offered sworn testimony about the waivers, and no opportunity was given below for discovery. Indeed, no evidence, outside the plain text of the written waivers themselves, was presented. And the waivers do not recite Davis' authority to waive on behalf of the ten companies or his position with those companies.

### PROCEDURAL BACKGROUND

The Trustee served investigatory subpoenas on SLK requesting billing-related records and correspondence relating to 48 entities and individuals, including SLK clients Active, Americus, and IVES. SLK refused to produce the documents, citing attorney-client privilege. The Trustee then moved to compel production in the Bankruptcy Court. The Bankruptcy Court denied the Trustee's motion to compel on the ground that he could not pursue discovery after having sued SLK in a separate adversary proceeding (Opinion pp. 5-8).

The Bankruptcy Court also addressed the Trustee's claims that certain former SLK clients had waived their privileges. The Bankruptcy Court concluded that valid waivers existed for CCC, CCAdvisors, and CCMBank (p. 11). For CCC, the Trustee offered a written waiver signed by Thomas Williams, executive vice president, chief operating officer, secretary and treasurer of CCC,

3

in addition to a board resolution signed by Robert Franklin and John Ayling, the two remaining directors of CCC. For CCAdvisors and CCMBank, the Trustee offered board resolutions also signed by Franklin and Ayling. SLK does not appeal the Bankruptcy Court's finding that the waivers were effective as to CCC, CCAdvisors, and CCMBank.

As to the ten waivers signed solely by Davis, the Bankruptcy Court concluded that two of the waivers -- those for CCAdvisors and CCMBank -- were invalid because Davis' position with those companies had been terminated in April 2003, several years before he signed the waivers, and therefore he "clearly lacked authority to waive any privilege as to these two entities" (p. 12). As to the eight remaining Davis waivers, the court held that SLK had failed to fulfill its obligation to present evidence that Davis lacked authority to waive with respect to these entities (*id.*). It is the Bankruptcy Court's conclusion as to these eight waivers which SLK appeals.

### JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 158(a)(3) to review the interlocutory order issued by the Bankruptcy Court on June 27, 2008. This Court granted SLK's Motion seeking leave to appeal on October 21, 2008 (Doc. No. 17).

### STANDARD OF REVIEW

On appeal from a bankruptcy court decision, a district court reviews questions of law *de novo*. *In re Gardner*, 360 F.3d 551, 557 (6th Cir. 2004). Before this Court are questions of law -- namely which party bears the burden of proof as to the validity of express waivers and the quantum of proof necessary to meet the burden. *See Fuji Kogyo Co. v. Pacific Bay Int'l, Inc.*, 461 F.3d 675, 681 (6th Cir. 2006) (holding a "court's allocation of the burden of proof is a question of law").

4

**DISCUSSION**

**General Principles**

The general rule is that the burden of establishing the existence of the privilege rests with the party claiming it. *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999). Case law is clear that it is the burden of the proponent of the privilege to establish that the privilege has not been waived, for example, by disclosure to a third party. *In re Grand Jury Subpoena*, 341 F.3d 331, 335 (4th Cir. 2003); *In re OM Secs. Litig.*, 226 F.R.D. 579 (N.D. Ohio 2005); *Shields v. Unum Provident Corp.*, No. 2:05 CV 744, 2007 WL 764298 (S.D. Ohio Mar. 9, 2007). The Bankruptcy Court relied on this point of law in its Opinion below (p. 9). However, the validity of a written waiver is a separate question from the initial question of whether the privilege exists.

There is also general agreement among many courts and circuits that once a prima facie case of privilege is established by a proponent, the party challenging the privilege then has the burden to establish that the communications in question are otherwise discoverable under an exception or waiver. *See Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 225 (1st Cir. 2005); *Sampson v. Sch. Dist. of Lancaster*, No. 05-6414, 2008 WL 4822023, at *8 (E.D. Pa. Nov. 5, 2008); *Martin Marietta Materials, Inc. v. Bedford Reinforced Plastics, Inc.*, 227 F.R.D. 382, 390 (W.D. Pa. 2005); *Perkins v. Gregg County*, 891 F. Supp. 361, 363 (E.D. Tex. 1995); *Texaco, Inc. v. La. Land & Exploration Co.*, 805 F. Supp. 385, 387 (M.D. La. 1992).

There is however no general agreement as to which party bears the burden to prove the ultimate validity of an express written waiver, and precisely what that burden entails. None of the cases cited above involve an alleged express waiver put forward by the *opponent* of the privilege.

**Holding**

This Court adopts a burden-shifting approach. When a claim of privilege through express waiver is raised, burdens shall be distributed as follows: (1) the proponent of the privilege has the burden of demonstrating, by a preponderance of the evidence, that the elements of privilege have been satisfied; (2) the opponent of the privilege must present sufficient evidence upon which a reasonable person may find that the privilege has been waived; (3) if the opponent meets its burden, the proponent of the privilege must disprove each demonstrated claim of waiver by a preponderance of the evidence.

**Legal Support**

There is no case law from the Sixth Circuit addressing this issue. The most instructive case appears to be *In re Grand Jury Proceedings*, 73 F.R.D. 647 (M.D. Fla. 1977). The case is very similar to the facts at issue here; an express written waiver was also involved, although in the context of a criminal prosecution. The court described the facts as follows:

> In this instance movant (who is an attorney) has been served with a document that purports to be an express waiver by his former client of the attorney-client privilege. When movant resisted an attempt by F.B.I. agents to take possession of movant's files, pursuant to the waiver, a factual issue concerning the validity of that waiver arose. Movant moved for an order that his former client, who is now in federal protective custody, be produced to testify concerning the voluntariness and authenticity of the purported waiver. Additionally, movant seeks an opportunity to question his former client outside the presence of government agents or counsel.
>
> At a hearing on the question of the genuineness and voluntariness of the waiver, the former client's present counsel testified, as did the F.B.I. director-in-charge. Both men testified that the former client had been informed of the significance and consequences of signing the waiver; that he was neither under arrest nor any form of restraint or compulsion; and that in their judgment he had signed the waiver freely and knowingly.

*Id.* at 652. The attorney-movant argued that the burden to establish the voluntariness of the waiver should be on the government. The court adopted a burden-shifting approach, finding the government

6

met its burden of establishing a valid waiver. "When faced with a document that on its face appears to be a genuine, voluntary waiver of the attorney-client privilege, *corroborated by witnesses present at the time the waiver was executed*, the Court concludes that the burden is on the movant to rebut the prima facie case of validity." *Id.* (emphasis added).

It is noteworthy that the government met its burden by offering evidence from corroborating witnesses to show the validity of a "genuine voluntary waiver." Here, the Trustee has offered no similar evidence in conjunction with the eight written waivers at issue. Neither the signer nor witness to the waiver have testified, nor has the authority of the signer been established. This Court rejects the argument that the Trustee, who opposes the privilege, merely has a "burden of production." The opponent of the privilege must present sufficient evidence upon which a reasonable person may find that the privilege has been waived.

The Trustee also cites *United States v. Chevron Corp.*, No. C 94-1885, 1996 WL 444597 (N.D. Cal. May 30, 1996) for support of the burden-shifting method. At issue was whether Chevron, the proponent of the privilege, had waived the privilege by disclosure to third parties. The court held:

> The prevalent, albeit unstated, practice appears to be to impose the initial burden of establishing the basic elements on the privilege proponent. Once the proponent does so, the burden of going forward with the evidence shifts to the opponent to establish a prima facie case of waiver -- facts upon which a reasonable person could find that the privilege has been relinquished. If the privilege opponent succeeds in making such a showing, the burden of going froward with evidence shifts back to the proponent to rebut the prima facie case by demonstrating that the privilege is still viable.

*Id.* at *3 (*quoting* Paul Rice, *Attorney-Client Privilege in the United States*, § 9:20 at 9-42, 43 (1993)).

The *Chevron* court held that once the privilege opponent established that third parties were either present at an attorney-client meeting or permitted to examine confidential attorney-client communications, Chevron "must prove that those third parties were acting as agents of either the

7

attorney or the client in order to avoid a finding that confidentiality was missing." *Id.* The court found the burden-shifting approach struck an adequate balance which "alleviates the onerous burden on a client asserting attorney-client privilege to prove a negative, i.e. that the privilege has not been waived, while still placing the ultimate burden of proof on the client." *Id.*

An express waiver was not at issue in *Chevron*. But, the case is useful because it also involved an analysis of employees of a client and the employees' authority within the client. The *Chevron* court's rationalization of the burden shift is well-reasoned. The burden shift alleviates the proponent from being forced to prove a negative while still placing the ultimate burden of proof with the proponent, who *usually* will be in the best position to access relevant information about its client's employees.

A burden-shifting approach was also proposed as a change to the Federal Rules of Evidence in 1997. *The Evidence Project*, 171 F.R.D. 330, 535 (June 1997). The proposal, which was never adopted by Congress, included adding a new Rule which reads as follows:

**Revised Rule 504. Attorney-Client Privilege; Burdens.**

When a claim of privilege is raised, burdens shall be distributed as follows: the proponent of the privilege has the burden of demonstrating, by a preponderance of the evidence, that the elements of the privilege claim in Rule 502(b) have been satisfied; the opponent of the privilege must present sufficient evidence upon which a reasonable jury may find that an exception to the privilege applies under Rule 502(e)(1)-(5), or that the privilege has been waived under Rule 503; the proponent of the privilege must disprove each demonstrated claim of exception or waiver by a preponderance of the evidence.

*Id.* at 535. The Commentary to Proposed Rule 504 rationalizes the proposal as follows:

Because the attorney-client privilege is an exception to the general rule that the law is entitled to everyone's evidence, courts construe the privilege narrowly and place the burden of establishing each element of the privilege, by a preponderance of the evidence, on its proponent. While there is universal agreement that the proponent of the privilege bears the burden of persuasion on the elements of the privilege, courts

8

>have not been clear or consistent in the burden they assign to the opponent of the privilege on the factual questions relating to exceptions and issues of waiver. Some courts have assigned the burden of persuasion on exceptions and issues of waiver to the opponent; however, most have not spoken to the issue. Since most grounds for waiver relate to the loss of the central element of the privilege-- confidentiality--the proponent, who bears the burden of persuasion on the elements of the privilege, should also bear the burden of disproving that demonstrated grounds of waiver are not true.

This Court agrees with this type of burden allocation. Other courts have cited the 1997 proposal with approval. *See Getty Petroleum Mktg., Inc. v. Capital Terminal Co.*, 391 F.3d 312, 322 (1st Cir. 2004); *Verizon Directories Corp. v. Yellow Book USA, Inc.*, 331 F. Supp. 2d 136, 139 (E.D.N.Y. 2004); *Secs. Inv. Protection Corp. v. Stratton Oakmont, Inc.*, 213 B.R. 433, 436 (Bankr. S.D.N.Y. 1997); *Stoddard v. State*, 887 A.2d 564, 594 (Md. 2005); *Spencer v. Bristol-Meyers Squibb Co.*, 720 A.2d 601, 606 (N.J. 1998); *State v. Eugenio*, N.W.2d 642, 650 (Wis. 1998).

SLK directs this Court to *United States v. Zolin*, 491 U.S. 554 (1989) as support for its position that the Trustee, as the opponent of the privilege, bears the ultimate burden of proof. That case, however, did not involve an express written waiver and is easily distinguishable from the facts here. The key holding in *Zolin* is the privilege is not waived where documents are produced to a federal district judge for *in camera* review to determine whether the crime-fraud exception to the privilege applies. *Zolin* was also concerned that opponents of the privilege might engage in baseless crime-fraud expeditions, requiring district courts to conduct numerous *in camera* reviews. To ease this concern, the court held that "[b]efore engaging in *in camera* review to determine the applicability of the crime-fraud exception, the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *Id.* at 572.

9

The required showing of a "factual basis adequate to support a good faith belief" did not go to the merits of the issue of privilege. Rather, it only concerned whether the district court was obligated to conduct an *in camera* review. Additionally, it didn't have anything to do with waiver, rather it concerned the crime-fraud exception. Information exchanged under the crime-fraud exception cannot be protected by privilege. The Sixth Circuit summarized *Zolin* as follows: "[E]ven inspections by the district judge, which do not destroy privilege, require a prior showing that is weakly analogous to probable cause." *In re Grand Jury Subpoenas*, 454 F.3d 511, 520 (6th Cir. 2006). The crime-fraud exception is more akin to requiring probable cause for *in camera* review than allocating burdens of proof.

SLK also argues that "a party that proffers a written document to the court purporting to waive a privilege should bear the burden of establishing the waiver's effectiveness" (Doc. No. 34, p. 8). This Court agrees to an extent, but also believes the proponent must ultimately bear the final burden, after the party proffering the waiver has established the effectiveness of the waiver by a preponderance of the evidence.

Finally, SLK argues the proponent should not be "forced to prove a negative." This Court finds, however, that once the validity of the waiver is established by a preponderance of the evidence by the opponent, the proponent can easily point to the opponent's evidence to try to show why that evidence is insufficient to meet the legal requirements of waiver. Here, for example, if the Trustee meets his preponderance of the evidence burden as to the waiver, SLK may ultimately bear the final burden to make the legal argument that Davis lacked the requisite authority under Ohio law to waive a corporation's privilege. As the record now stands, there is no testimony from Davis or anyone else surrounding the purported written waiver.

**CONCLUSION**

The underlying facts of this case (a defunct corporation and a law firm using attorney-client privilege to avoid production of corporate records) are unusual, but this Court's holding will apply equally to other more common situations involving express waivers of the important privilege protecting attorney-client communications in both individual and corporate settings. When an express waiver of the privilege is offered, and the waiver's validity is questioned by challenging whether the waiver is genuine, voluntarily executed or with appropriate authority, then the proponent of the waiver must support the waiver's validity with corroborating evidence.

The Order of the Bankruptcy Court is vacated. This matter is remanded to allow for discovery; for the parties to offer proof in an attempt to meet their respective burdens under this Court's holding; and finally, for a judicial determination of whether the eight remaining waivers are valid.

IT IS SO ORDERED.

                                              s/ *Jack Zouhary*
                                              JACK ZOUHARY
                                              U. S. DISTRICT JUDGE

                                              March 30, 2009